DYMTRO SEMENOWICH et al., complainants-appellees,

*v.*

MAYK MELNYK et al., defendants-appellants.

[Decided June 19th, 1922.]

1. Where both grantor and grantee to a deed acted with intent to defraud the grantor's creditors, the deed is void.

2. Proof that a conveyance was made to protect the property from the grantor's creditors until a more favorable time for selling it, and that the plan was proposed by the grantee who paid the grantor a sum of money to give apparent validity to the transaction, which sum was subsequently repaid to him to discharge taxes levied upon the land after the conveyance, shows that the grantee participated in the fraudulent intent, and, therefore, the deed is void.

3. The fact that the conveyance was intended only to postpone the sale until it could be made to better advantage, does not make the deed valid.

4. A fraudulent conveyance is void only as against creditors or others who may have lawful actions or demands, and is valid as between the parties.

5. Equity will not·lend its aid to consummate a fraud, however hard the case may be, and will leave both parties to a fraudulent conveyance where it finds them.

6. A subsequent grantee of property, previously conveyed to another in fraud of creditors, acquires no greater rights than his grantor had, and equity will give him no relief which it would deny to the grantor because of his participation in the fraud.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Backes, whose opinion is reported in *93 N. J. Eq. 67.*

*Mr. William Greenfield,* for the complainants.

*Mr. Theodore McCurdy Marsh,* for the defendants.

The opinion of the court was delivered by

SWAYZE, J.

This is substantially an application for surplus money after a decree setting aside a conveyance as in fraud of creditors and ordering a sale of the property to satisfy the debt. The application is made in advance of sale in order that the parties entitled to the surplus may know how much they may bid to protect their interests. No objection is made to this procedure. In fact the first application to the court for instructions was made by Novak, the present appellant. He raises no objection and we think, therefore, we may properly deal with the substantial merits of the case. The controversy is between Michael Novak and Leonard J. Fruzinski. Novak claims under the fraudulent conveyance from Mayk Melnyk and wife dated November 16th, 1918, recorded November 18th, 1918. Fruzinski claims under a conveyance from Mayk Melnyk and wife dated April 15th, 1921, recorded May 2d, 1921. There is no conveyance back

from Novak to Melnyk and as far as the pleadings or proofs show the legal title is still in Novak. Fruzinski, by cross-bill, claims a right to redeem the land. Novak, by answer and cross-bill, avers that by reason of the fraud of Melnyk, Fruzinski and Melnyk have no right or standing in court and no right to ask for a redemption of the lands or for any relief in equity in connection therewith. Obviously this is correct unless the deed of November 16th, 1918, from Melnyk to Novak is void. Otherwise Novak's title was at most only voidable and Melnyk had nothing to convey to Fruzinski. At the time Fruzinski's cross-bill and Novak's answer were filed there was an adjudication made by decree in this suit on January 25th, 1921, that the deed from Melnyk to Novak was made and executed by them with intent to cheat and defraud the complainants (three creditors of Melnyk). If this adjudication were meant to adjudicate that Novak as well as Melnyk acted fraudulently, it would be an adjudication of fraud participated in by grantor and grantee and the deed would be void. That is not the case and the decree on Fruzinski's cross-bill expressly so adjudicates by way of correction of what the vice-chancellor in his opinion of July 25th, 1921, calls an inadvertence in the decree of January 25th. An inadvertence it undoubtedly was since the whole frame of the decree is based on the idea that the conveyance is not void but valid by way of security to Novak for actual *bona fide* advances to Melnyk and it is sustained as an equitable mortgage under the rule of *Demarest* v. *Terhune, 18 N. J. Eq. 532.* But if the deed is sustained as an equitable mortgage, it must be good to that extent and there is no legal title in Fruzinski. On the face of the case there is no equitable title since the deed was accompanied by a declaration of trust of even date in favor of Nicholas Yacenty, who as far as the case shows is still the equitable owner. We need not dwell further on this state of the title, since our examination of the cause has led us to the conclusion that we are dealing with a case of fraudulent intent shared by both the grantor Melnyk and the grantee Novak. It is enough to cite *Muirheid* v. *Smith, 35 N. J Eq. 303, 310; New York Fire Insurance Co.* v. *Tooker, 35 N. J. Eq. 408; affirmed, 36 N. J. Eq. 646; Horton* v. *Bamford, 79 N. J. Eq.*

*356* (at *p. 374*). This makes necessary an examination of the facts.

At the time of the deed to Novak, Melnyk was heavily in debt and suits were pending. He consulted Rossback, a lawyer, who told him he must do something, that Novak wanted to help him, to go to Novak and return the next day. He went to see Novak that night. Novak told him he already "knew about," evidently referring to the talk with Rossback. The three met the next day and Novak told Melnyk that if judgments came in, he would lose his property and never get a penny. Novak then said, as testified by Melnyk, "If you turn the property to me I will hold it until you get customer to sell it for better prices and pay up," to which Melnyk says he replied, "Well, I think that will be good," and he did so, Rossback transacting the business. The form of passing some money from Novak to Melnyk was gone through at Novak's suggestion because Novak said, according to Melnyk's testimony, "When we make transaction we must have some show; I pay you some money." The amount paid by Novak was $800; of which $200 went to Rossback for services, $500 to Rossback for a loan afterward repaid, and $100 was used by Melnyk for living expenses. In the following January, Melnyk paid back to Novak the $800 for the purpose of enabling him to pay taxes which were not a lien at the time of the conveyance and were Novak's obligation if the deed had been genuine. The upshot was that Novak had title to the property and had paid nothing for it. On the same day that Melnyk executed the deed, Novak executed a declaration of trust which, however, was not recorded until June 4th, 1919. It ran in favor of Nicholas Yacenty, a brother-in-law of Melnyk. The evidence as to Yacenty's interest is not very convincing but Melnyk says he owed Yacenty $1,000. Yacenty was not produced as a witness. We think these combined facts sufficient to prove a fraudulent intent on the part of both Novak and Melnyk. Novak planned what he and Melnyk executed. Rossback testified that the deed was given

"for the purpose of conserving the properties to creditors. Creditors were pressing Melnyk very badly and the mortgages and tax claims had been outstanding and the Harrington company had already gone into possession of the Grove street property and started to collect rents."

Rossback says also the declaration of trust was not put on record because

"it was arranged that time between the parties that the declaration of trust was to remain with me unrecorded so that Novak could handle the property *expeditiously* if he had occasion to."

The case presented is a deliberately planned scheme to hinder, delay and defraud creditors and to conceal for more than six months the name even of the ostensible owner of the equitable interest. The scheme is not helped by the pretence that it was meant for the benefit of creditors to make it possible to sell to better advantage. The law does not permit a debtor to choose his own convenience for the payment of his debts. Our statutes, like the statute of Elizabeth, expressly forbid hindering or delaying as well as defrauding creditors of their lawful actions. *Comp. Stat. 2618* § *12.* The statutes, however, make a fraudulent conveyance void only as against creditors or others who may have lawful actions, debts, damages or demands, and it is well settled that such conveyances are valid as between the parties. The parties are not hindered, delayed or defrauded of lawful actions, debts, damages or demands, and if they were it is by their own acts and they have themselves to thank for it. *Baldwin* v. *Campfield, 8 N. J. Eq. 891; Schenck* v. *Hart, 32 N. J. Eq. 774.* There is no resulting trust in favor of the fraud-doer who furnishes the money. *Cutler* v. *Tuttle, 19 N. J. Eq. 549, 562; Surye* v. *Lemberger, 114 Atl. Rep. 454.* Equity will not lend its aid to consummate a fraud however hard the case may be. The parties have made their bed; they must lie in it. Chancellor Williamson quotes the well known passage from Justice Story and adds: "We must not be misled by any supposed hardship of the case. The conduct of the son-in-law, in this transaction, may justly excite our indignation. Our sympathies are naturally with the old man whom he may have deceived and wronged; and yet we may not violate a single principle, upon which law and equity are administered, to permit the one or vindicate the other." This court again spoke to the same effect through Justice Magie in *Schenck* v. *Hart, 32 N. J. Eq. 774.* Equity leaves fraud-doers where

it finds them. In the present case the creditors seem to have been paid out of the property through Novak as a medium, and Novak holds the property necessary to reimburse him; but if it were necessary for him to have the aid of the court it would be denied him, because of his attempted fraud. So aid must be denied to Melnyk and his grantee Fruzinski; to Melnyk because he participated in the fraud; to Fruzinski because he can acquire no better right than Melnyk, his grantor, had. It would be preposterous to allow a fraud-doer to escape the consequence of his fraud by putting some one else in his place. The rights of fraud-doers are not looked at in the light of the wrong they accomplish but of the wrong they plan.

Let the decree be reversed, with costs, and a decree entered dismissing both cross-bills.

*For affirmance*—BLACK, WILLIAMS, ACKERSON—3.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KATZENBACH, WHITE, HEPPEN- HEIMER, GARDNER, VAN BUSKIRK—11.