28 N.J. Super. 119 (1953)
100 A.2d 301
MARIA FELICIA LAURINO, OTHERWISE KNOWN AS MARY F. LAURINO, PLAINTIFF-RESPONDENT,
v.
ENRICO LAURINO, OTHERWISE KNOWN AS EDWARD LAURINO, DOMINICK E. LAURINO AND MARCELLA LAURINO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1953.
Decided October 30, 1953.
*121 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. Maurice A. Potter argued the cause for appellants (Messrs. Potter & Fisher, attorneys).
Mr. John Warren, Jr., argued the cause for respondent (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
The plaintiff Maria Felicia Laurino and the defendant Enrico Laurino were married on November 15, 1917 and lived and toiled together until June 1949. They reared seven children. They acquired as tenants by the entirety a home in Oceanport, a farm of 60 acres, and a parcel of land of five acres, both in Shrewsbury. They derived their livelihood from the sale of the products of the farm. In the latter years they customarily resided during the winter months in modest quarters in Miami, Florida.
On October 18, 1948 they executed a deed purporting to convey the farm to their son Dominick. On November 19, 1948 they executed a deed conveying the home to their daughter Nancy. In January 1951 Enrico Laurino instituted an action against his wife in the Circuit Court of the Eleventh Judicial Circuit in Dade County, Florida, in which on March 1, 1951 it was decreed that "this Court has jurisdiction of the parties, personal service having been had upon the defendant." The marriage was thereby dissolved and alimony in the sum of $25 per week was directed to be paid by Enrico to Maria.
The present action was instituted on July 2, 1951 in which the plaintiff Maria seeks a judgment declaring the Florida decree of divorce to be null and void, directing the defendant to provide the plaintiff with suitable support and maintenance, and adjudging that the son Dominick retains title to the farm in trust for the plaintiff and defendant and should now reconvey it.
The foregoing epitomical statement discloses a background of the principle factual events. We are requested by this appeal to review the propriety of the judgment rendered in *122 this action which resolves that the Florida divorce decree is void, awards the plaintiff support and maintenance in the amount of $35 a week, a counsel fee of $1,000, and adjudges that the plaintiff by reason of a constructive trust has "a life estate in the farm property in common with the right of survivorship in her with the defendants" Dominick and his wife, and that the latter account for the rents, use and profits acquired by them from the property since the conveyance on October 18, 1948, less legally deductible expenditures.
We have studiously examined the transcript of the testimony and notwithstanding our appreciation of the advantageous opportunity of the trial court to evaluate the credibility of the witnesses, we are not persuaded that the evidence possessed the essential convincing quality adequately to sustain the burden of establishing the invalidity of the Florida decree of divorce. Rule 1:2-20, R.R. 1:5-3; Rule 4:2-6, R.R. 2:5. The judgment of the sister state raises a presumption that the court possessed jurisdiction over the subject matter and the persons, and the burden of demolishing the judgment rests heavily upon the one who assails it. Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146 (1951); Ballentine v. Ballentine, 112 N.J. Eq. 222 (E. & A. 1933).
The statutory jurisdiction of our courts to award maintenance (R.S. 2:50-39, now 2A:34-24) is applicable only where the relationship of husband and wife exists. Peff v. Peff, 2 N.J. 513 (1949); Isserman v. Isserman, 11 N.J. 106, 114 (1952). We therefore conclude that the judgment, in so far as it determines the invalidity of the divorce decree and awards maintenance to the plaintiff, should be reversed. The weekly alimony has been continuously paid in conformity with the terms of the Florida decree. Our consideration of the meager information made available to us concerning the extent of the professional services rendered by counsel for the plaintiff in the matrimonial branch of the case induces us to reduce the allowance to $500. An allowance to counsel for the unsuccessful party seems to have been just. R.R. 4:55-7(a).
*123 Our study of the evidence, however, does not warrant the conviction that the conclusions of the trial judge relative to the conveyance of the farm land are unsustained.
Assuredly in the fall of 1948 the defendant for some reason desired to dispose of or disestablish his record ownership in the real estate in which he shared title with his wife. He urged her to participate in the accomplishment of that purpose. The trial judge found a disclosure of the associated circumstances in the uncontroverted testimony of the plaintiff. She testified in explanation of the conveyance to the son Dominick that the defendant said to her, "Come on, let's sign this property over because my brother had some trouble with me and I don't want to lose my property." "He said he would settle with his brother and he would put it back." The making of those representations was not denied by the defendant.
There are additional facts of significance. The plaintiff did not receive any pecuniary considerations for either the conveyance of the farm to Dominick or the residential property to the daughter. Although the homestead was conveyed to the daughter, then unmarried, in November, the plaintiff and defendant upon returning from Florida in the spring resumed for some period thereafter the occupancy of it. Although the farm was ostensibly sold to Dominick in 1948 the defendant has ever since continued to cultivate it and receive as formerly the proceeds of the sale of the crops.
In transferring the title of the farm to the son the defendant is said to have received $3,000. This consideration was supplied by placing a mortgage encumbrance of a like amount on the farm. It is noticeable that there are revenue stamps in the sum of $11 attached to the deed.
In this smooth and gentle manner the interest of the plaintiff in the property was eliminated. The defendants did not undertake at the trial to change the complexion of the circumstances reflected by the plaintiff's testimony. It was not made evident that the defendant at the time of his representation to the plaintiff had in fact any reasonable apprehension whatever of "losing" his interest in the property *124 through "trouble" with his brother. Such proof is not requisite, but its absence here is somewhat significant.
In resisting the plaintiff's alleged cause of action the defendants invoke the application of the doctrine of unclean hands. The insistence is that in the design to defraud the defendant's brother the plaintiff and the defendant were in pari delicto.
It is true that in equity the rights of fraud-doers are not observed in the light of the wrong they accomplish but of the wrong they plan. Semenowich v. Melnyk, 93 N.J. Eq. 615, 620 (E. & A. 1922). However, the doctrine of clean hands has its logical justification only in considerations of good conscience and natural justice. And so a court of equity may, in furtherance of justice and sound public policy aid one who is comparatively the more innocent and grant such an one affirmative relief. Such an exigency arises where there are collateral and incidental circumstances attending the transaction and affecting the relations of the two parties which render one of them comparatively free from the accusation of willfully and deliberately engaging in the dishonorable and unscrupulous undertaking. Such circumstances commonly exhibit the exercise of imposition, dominance, undue influence, deceit, and the like influences in inducing the one party to engage in the dishonest transaction. 2 Pom. Eq. Jur. § 942 (on p. 2000); vide, Tami v. Pikowitz, 138 N.J. Eq. 410 (Ch. 1946). To have declined to accept the doctrine of unclean hands as a positive defense in the circumstances of the present case was not a manifestly erroneous exercise of equitable discretion.
Observable also is the failure of the defendants Dominick and his wife, in the face of the plaintiff's testimony and other adverse revelations, to submit any proof to invite to their aid the equities of a bona fide purchaser of the farm for a valuable consideration, if in truth Dominick occupied such a status.
We conclude that a mandate should issue reversing the judgment in so far as it adjudges the Florida divorce decree to be void and awards maintenance of $35 a week to the *125 plaintiff. The counsel fee is reduced to $500. In other respects the judgment is affirmed.