43 N.J. Super. 106 (1956)
127 A.2d 903
SALLY L. UNTERMANN, PLAINTIFF-APPELLANT,
v.
JOHN JOSEPH UNTERMANN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 1956.
Decided December 20, 1956.
*107 Before Judges CLAPP, JAYNE and FRANCIS.
*108 Mr. Roger H. McGlynn argued the cause for plaintiff-appellant (Messrs. McGlynn, Stein & McGlynn, attorneys; Mr. Edward R. McGlynn, of counsel).
Mr. Irving Siegler argued the cause for defendant-respondent (Messrs. Siegler & Siegler, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
This is an action for separate maintenance, which was dismissed on motion of the defendant before trial. The plaintiff had previously brought an action against defendant and Sarah Kaltman, defendant's alleged second wife, for a declaratory judgment, seeking to have the court determine the marital status of the parties; but it was held that the unclean hands of the plaintiff precluded her from maintaining that action. Untermann v. Untermann, 19 N.J. 507 (1955), modifying 35 N.J. Super. 367 (App. Div. 1955). The question brought before us by plaintiff's present appeal is whether that adjudication with respect to her unclean hands is res judicata and operates as a bar to this action for maintenance.
The facts are more fully reported in the opinions cited. On April 15, 1929, plaintiff secured a divorce in Nevada from her husband, Harold E. Cheney, serving him by publication and also personally in New Jersey (19 N.J., at page 513). Though presumptively regular and entitled to full faith and credit, the divorce is nevertheless voidable by reason of a fraud perpetrated on the Nevada court with respect to plaintiff's domicil. On the day she secured the divorce, she went through a marriage ceremony with defendant; but, if the divorce is voided, this marriage cannot be sustained. The parties lived together in the same household for a period of over 20 years subsequent to 1929, engaging in marital relations, in any event, for the first ten of these years. In 1953 defendant obtained a divorce from plaintiff in Mexico, which is utterly nugatory, and subsequently he married Sarah Kaltman.
The plaintiff cannot succeed in her action for maintenance, unless she establishes a relationship of husband and *109 wife between herself and the defendant. Peff v. Peff, 2 N.J. 513, 525 (1949). Nor can she succeed therein if her hands are unclean; for in a proper situation the doctrine of unclean hands bars a cause of action for maintenance. Hollingshead v. Hollingshead, 91 N.J. Eq. 261, 271 (Ch. 1920). However, she may be aided here by an estoppel that may perhaps be raised against the defendant by reason of his own complicity in the Nevada divorce proceedings. See Untermann v. Untermann, 35 N.J. Super., at page 372; Id., 19 N.J., at page 519.
The case therefore comes down to this. Plaintiff's action for maintenance is barred unless it can be said that her hands are clean and that defendant is estopped from impugning their purported marriage.
These doctrines of unclean hands and estoppel, so far as they affect this case, are somewhat akin. Cf. Danes v. Smith, 30 N.J. Super. 292, 304 (App. Div. 1954). They are flexible in their application, turning largely on the circumstances involved in the (see Untermann v. Untermann, 19 N.J., at page 517) "total situation." See as to the matter of clean hands generally, Medical Fabrics Co. v. D.C. McLintock Co., 12 N.J. Super. 177, 180 (App. Div. 1951); White v. White, 16 N.J. 458, 464 (1954). They may turn, too, upon the relative innocence or culpability of the plaintiff and defendant, for the law may aid the one who is comparatively the more innocent. Laurino v. Laurino, 28 N.J. Super. 119, 124 (App. Div. 1953).
The question to be resolved here is, what differentiation is to be made between the circumstances presented now and those presented by the previous action. We have never been advised as to the underlying reason which induced the plaintiff to sue for a declaratory judgment, and we choose not to speculate on the matter. In any event, forthwith after the entry of the trial court's judgment in the first case, defendant took advantage of it by discontinuing the payments of $60 per week that he had been making to her for her support; and that precipitated this action. The trial court in one clause of the previous judgment had declared *110 that the Nevada court was without jurisdiction and that its decree was not entitled to full faith and credit. However, in Untermann v. Untermann, 19 N.J., at page 519, the Supreme Court modified the judgment by striking that clause. It said that in view of the indefinite nature of the proofs with respect to the defendant's properties, it could not be sure whether by declaring the Nevada decree invalid, it would not worsen a bad situation and confer upon defendant some economic advantage with respect to those properties. Rather than confer such an advantage, the Supreme Court (19 N.J., at page 520) decided to leave the parties where it found them.
Are we now to say that defendant should be given an economic advantage of another sort, namely, that he should be relieved of the duty of supporting the plaintiff? Mention may be made of one general circumstance, namely, that her present action is for maintenance, while by the previous action she sought to have defendant's marriage with Sarah Kaltman declared void. The policies of the law, which induce the courts under certain circumstances to disfavor a suit instituted for the purpose of having a marriage declared void, do not extend to an action for maintenance. For a maintenance action seeks rather to sustain the marital relation and uphold the obligations inhering therein. Pinkinson v. Pinkinson, 92 N.J. Eq. 669, 672 (E. & A. 1921).
More stress however can be laid on the particular circumstances, proof of which was adduced at the hearing in the prior action. For in our view, those circumstances  which induced the courts to look indifferently on that action for a declaratory judgment, brought for some undisclosed purpose  may perhaps now be sufficient to call for relief to the plaintiff when the defendant presses for an economic advantage. At that hearing when plaintiff was asked whether she had decided to go to Nevada to secure a divorce from Harold E. Cheney, she testified (35 N.J. Super., at page 370), "Mr. Untermann decided it for me." It also appears (19 N.J., at page 514) that he paid all of her expenses in connection with the Reno divorce, including *111 transportation and maintenance. More than that, when she was asked whether she had advised defendant as to the time when the case was coming up in Nevada, she testified that defendant's brother (a New Jersey attorney, since deceased) was her lawyer and that he "took care of all the service here in New Jersey and all." (Italics added). The proofs with respect to these matters were meagre, but they cannot be overlooked. As to the effect of such circumstances as these, cf. Staedler v. Staedler, 6 N.J. 380, 393 (1951); Nappe v. Nappe, 20 N.J. 337, 344 (1956); cf. also Woodhouse v. Woodhouse, 11 N.J. 225, 229, 230 (1953). In mentioning the matters above stated, we do not palliate others referred to in 19 N.J., at pages 518, 519.
We are satisfied that the case should have been heard below. The order dismissing the action will be reversed, and the case remanded for a hearing.